UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re PATRIOT NATIONAL, INC.
SECURITIES LITIGATION

Case No. 1:17-cv-01866-ER

Honorable Edgardo Ramos

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR
AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
<u>AND COMPENSATORY AWARDS TO CLASS REPRESENTATIVE</u>**

498711.1

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................... 1

II.    INTRODUCTION ......................................................................................... 1

III.   ARGUMENT ............................................................................................... 4

       A.    Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Expenses
             from the Common Fund ............................................................................ 4

       B.    The Court Should Award a Reasonable Percentage of the Common Fund ........... 5

       C.    The Requested Attorneys' Fees Are Reasonable ....................................... 7

             1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
                   the-Fund Method ........................................................................ 7

             2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the
                   Requested Fee ............................................................................ 9

       D.    Factors Considered by Courts in the Second Circuit Confirm that the Requested
             Fee Is Fair and Reasonable ..................................................................... 11

             1.    Time and Labor Expended Support the Requested Fee ..................... 11

             2.    The Risks of Litigation Support the Requested Fee ......................... 12

             3.    The Magnitude and Complexity of the Action Support the Requested Fee
                   ...................................................................................................... 16

             4.    The Quality of Plaintiffs' Counsel's Representation Supports the
                   Requested Fee .............................................................................. 17

             5.    The Requested Fee in Relation to the Settlement Amount ............... 18

             6.    Public Policy Considerations Support the Requested Fee ............... 18

             7.    The Reaction of the Settlement Class to Date Supports the Requested Fee
                   ...................................................................................................... 19

       E.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to
             Achieve the Benefit Obtained ................................................................. 20

F.      Plaintiffs Should be Awarded Their Reasonable Awards Under 15 U.S.C. § 78u-
        4(a)(4) ................................................................................................................... 21

IV.   CONCLUSION ................................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ................................................................... 2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................... 3

*Athale v. Sinotech Energy Ltd.*,
  11 Civ. 05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)........................................ 5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ............................................................................... 5

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  No. 09 Civ. 686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) ..................................... 10

*Beckman v. Keybank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013)................................................................... 8

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 Civ. 2207 (JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .............................. 6, 10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................... 4

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................... 13

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........... 4, 7, 17, 18

*Clark v. Ecolab, Inc.*,
  No. 07 Civ. 8623(PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................... 8

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011)......................................................... 6, 10

*Fogarazzo v. Lehman Bros. Inc.*,
  No. 03 Civ. 5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)................................ 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) .................................................................... 14

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ................................................................. *passim*

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P.,
  212 F.R.D. 400 (E.D. Wis. 2002) .......................................................... 14

*Hayes v. Harmony Gold Mining Co.*,
  No. 08 Civ. 03653 (BSJ)(MHD), 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ........................ 7

*Hicks v. Morgan Stanley,*
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................. 4, 7, 10, 19

*Holden v. Burlington N., Inc.*,
  665 F. Supp. 1398 (D. Minn. 1987) ........................................................ 15

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ............................................................ 14

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................... 15

*In re AOL Time Warner S'holder Deriv. Litig.*,
  No. 02 Civ. 6302(CM), 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ........................... 10

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................... 16

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014) ............................................................. 22

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................... 14

*In re Bisys Sec. Litig.*,
  No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y July 16, 2007) ....................... 10

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ...................................................... 6

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ....................... 19

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ....... 9, 10, 13, 18

*In re Deutsche Telekom AG Sec. Litig.*,
No. 00-CV-9475 (SHS), 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ................................... 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................ 6, 17

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ................................. 7, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................... *passim*

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..................... 22

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 9, 17, 20

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ............................................................... 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ...................................................... 20

*In re Interpublic Sec. Litig.*,
No. 02 CIV.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .................................... 5

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. 2009) ........................................... 21, 22

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................... 15

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ............................................................... 6

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ...................................................... 10

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................... 4

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................... 9

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. 2007) ............................................................... 17, 22

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................ 6

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .............................. 8

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  No. 03-CV-4372 (DMC), 2009 WL 4730185 (D.N.J. Dec. 4, 2009)........................ 16

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................... *passim*

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ................................................................................. 9

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................. 7

*Monzon v. 103W77 Partners, LLC*,
  2015 WL 993038 (S.D.N.Y.  2015) ................................................................. 8

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ................................................................... 19

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................... 14

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)................................ 13

*Tellabs, Inc. v. Makor Issues & Rights*, Ltd.,
  551 U.S. 308 (2007) ............................................................................... 5, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................. 5, 6, 10

*Wilson v. LSB Industries, Inc.*,
  No. 1:15-cv-07614-RA-GWG, 2019 WL 3542844 (S.D.N.Y. June 28, 2019)........................... 7

*Yang v. Focus Media Holding Ltd.*,
   No. 11-cv-9051, 2014 WL 4401280 (S.D.N.Y. 2014) ............................................................ 15

*Yurzay v. HSBC Bank USA, N.A.*,
   2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)................................................................................. 8

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ........................................................................... 8

## STATUTES

15 U.S.C. §78u-4(a)(6) ..................................................................................................................... 6

15 U.S.C. § 78u-4(a)(4)21 ....................................................................................................... ii, 21

15 U.S.C. § 78u- 4(a)(4) ................................................................................................................ 21

498711.1

## I.      PRELIMINARY STATEMENT

Court-appointed Lead Counsel, Berger Montague and Glancy Prongay & Murray LLP ("GPM"), having achieved a settlement of $6,500,000 in cash for the benefit of the Settlement Class, respectfully submit this memorandum of law in support of their motion on behalf of all Plaintiffs' Counsel for an award of attorneys' fees in the amount of 33% of the Settlement Fund—or $2,145,000, plus interest earned at the same rate as the Settlement Fund.[1]   Lead Counsel also seek: (a) reimbursement of $154,469.29 in litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (b) awards pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") in the aggregate amount of $6,000 for Plaintiffs' costs directly related to their representation of the Settlement Class.

## II.     INTRODUCTION

The proposed Settlement, which provides for a cash payment of $6,500,000 in exchange for resolution of all claims against Defendants and Defendants' Releasees, represents an extremely favorable result for the Settlement Class, particularly when juxtaposed against the significant obstacles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation.   In undertaking this litigation, Plaintiffs' Counsel faced numerous challenges to establishing liability, loss causation, and damages.   The risk of losing

---

[1] "Plaintiffs' Counsel" consist of Lead Counsel, The Grant Law Firm, PLLC, Safirstein Metcalf LLP, and Bronstein, Gewirtz & Grossman, LLC.   All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 20, 2018 (ECF No. 101-1) (the "Stipulation") or in the Joint Declaration of Lawrence Deutsch and Lionel Z. Glancy in Support of: (I) Plaintiffs' Motion Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Class Representatives (the "Joint Declaration" or "Joint Decl."), filed concurrently herewith.   Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

was very real, and it was greatly enhanced by the fact that Plaintiffs' Counsel would be litigating against defendants represented by highly skilled defense counsel, under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See Alaska Elec. Pension Fund v. Flowserve Corp*., 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").  Moreover, Defendant Patriot National, Inc.'s ("Patriot National" or the "Company") bankruptcy, and the practical limits of recovery from the individual Defendants and their insurers, meant that there was no guarantee that Plaintiffs' Counsel would be paid, or their hard costs reimbursed, regardless of effort or result. Despite these risks, Plaintiffs' Counsel worked 3,268.79 hours, and advanced $154,469.29 in expenses, all on a contingency basis.  The work performed by Plaintiffs' Counsel is summarized below (*see infra* § III.D.) and set forth in greater detail in the Joint Declaration.[2]

As compensation for their significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 33% of the Settlement Fund.  The requested fee is consistent with attorney fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar.  Indeed, the requested fee represents a multiplier of 1.06 on Plaintiffs' Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one.

---

[2] The Joint Declaration is an integral part of this submission.  For the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class.

Lead Counsel also seek reimbursement of $154,469.29 in out-of-pocket litigation expenses incurred in prosecuting this Action.  *See* ¶¶88-97.  This amount is below the $250,000 limit disclosed in the Notice, and it equates to less than 2.4% of the Settlement Fund.  The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action.  Accordingly, they should be approved.

Finally, Lead Plaintiffs Barry A. Smith ("Smith") and Sunil Shah ("Shah"), and named Plaintiff Adam Kayce ("Kayce"), respectfully request PSLRA awards in the total amount of $6,000 ($2,500 each for Smith and Shah, and $1,000 for Kayce) to compensate them for the time and effort they have expended on behalf of the Settlement Class.  Ex. 9-11.[3]  Each of these Plaintiffs researched the facts of the case, reviewed filings, conferred with Plaintiffs' Counsel about litigation and settlement strategies, and authorized Plaintiffs' Counsel to settle the case. But for their efforts, the Settlement Class would have recovered nothing.  *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and [the Supreme] Court . . . have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions.").

For the reasons set forth herein, and in the Joint Declaration, Lead Counsel respectfully request that the Court award Plaintiffs' Counsel 33% of the Settlement Fund, approve reimbursement of $154,469.29 in litigation expenses, and grant PSLRA awards to Plaintiffs Smith, Shah and Kayce in the aggregate amount of $6,000.

---

[3] Lead Plaintiff ODS Capital LLC supports the Settlement, but is not seeking a PSLRA award. Ex. 8.

## III.    ARGUMENT

### A.    Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

Where counsel's efforts have created a "common fund" for the benefit of a class, counsel are entitled to seek an award of attorneys' fees and reimbursement of litigation expenses to be compensated from that common fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (confirming that attorneys who create a "common fund" are entitled to "a reasonable fee – set by the court – to be taken from the fund").  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See Goldberger*, 209 at 47.

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014); *see also Hicks v. Morgan Stanley et al.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").  This District has consistently adhered to these teachings.  *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL

2944620, at *12 (S.D.N.Y. July 31, 2008) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund."). The "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004).

The Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Plaintiffs' contributions and Plaintiffs' Counsel's representation in this Action embody the policies intended to encourage private advocacy as a weapon to enforce the securities laws. The requested attorneys' fees of 33% of the Settlement Fund, reimbursement of $154,469.29 of litigation expenses, which were necessary and reasonable, and $6,000 in total PSLRA awards, are very much warranted.

### B.     The Court Should Award a Reasonable Percentage of the Common Fund

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees." *Goldberger*, 209 F.3d at 50. However, "the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions." *Athale v. Sinotech Energy Ltd.*, 11 Civ. 05831 (AJN), 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive

for the efficient prosecution and early resolution of litigation."). Using the percentage-of-the-fund method to determine attorneys' fees is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class." 15 U.S.C. §78u-4(a)(6).[4]

Use of the percentage method does not, however, render lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson*, 2011 WL 4357376, at *14-15.

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage

---

[4] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 CM, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

### C.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The 33% fee requested by Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in comparable complex class actions. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 WL 6971424, at *9, *11-*12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million); *Wilson v. LSB Industries, Inc.*, No. 1:15-cv-07614-RA-GWG, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding 33 1/3% of $18.45 million settlement fund); *McIntire v. China Media Express Holdings, Inc.*, No. 1:11-cv-00804-VM-GWG, slip op. at 2 (S.D.N.Y. Sep. 18, 2015) (awarding 33.33% of $12 million settlement) (Ex. 13); *City of Providence*, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (finding that 33 1/3% fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.").[5]

---

[5] *See also Sanders v. The CJS Solutions Group, LLC*, No. 17-cv-3809, ECF No. 106 (S.D.N.Y June 22, 2018) (Ramos, J.) (awarding one-third of $3,240,000 settlement) (Ex. 14); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653 (BSJ)(MHD), 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *Fogarazzo v. Lehman Bros. Inc.*, No. 03 Civ. 5194, 2011 WL 671745, *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In Van Der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284, slip op. at 2 (S.D.N.Y. Dec. 7, 2006) (awarding 33

Moreover, Plaintiff's Counsel should not be "penalize[d] . . . for achieving an early settlement, particularly where . . . the settlement amount is substantial." *Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (awarding a 33% fee where settlement was reached after consolidated amended complaint was filed).[6]  Here, Plaintiffs' Counsel achieved a highly favorable settlement long before trial, sparing the Settlement Class the significant risks Plaintiffs would have faced at each stage of the litigation—including on a motion to dismiss (which defense counsel would no doubt have filed), at class certification, on summary judgment, at trial, and on appeal—not to mention the years the Settlement Class would have had to wait for a recovery, if any.  *See Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y.  2015) (awarding 33 1/3% of the settlement fund and noting that the "percentage of the fund method in common fund cases like this one … directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources.").

---

1/3% of $8 million settlement) (ECF No. 45) (Ex. 15); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623(PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund).

[6] *See also Maley*, 186 F. Supp. 2d at 370(awarding 33.3% of $11.5 million settlement, representing a 4.65 multiplier, where motions to dismiss were pending); *Yurzay v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (awarding 31.7% fee despite settlement after complaint was filed and with only limited discovery); *In re TeleTech Litig.*, No. 1:08-cv-00913-LTS, ECF No. 82 (S.D.N.Y. June 11, 2010) (awarding 30% of $11 million settlement reached before motion to dismiss was filed) (Ex. 16); *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding 33% fee despite settlement after amended complaint was filed with only limited discovery).

### 2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award.   *See Goldberger*, 209 F.3d at 50.   The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[7]   Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar."   *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).   "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."   *Id.* (citing *Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Plaintiffs' Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 3,268.79 hours to the prosecution of this Action, resulting in a lodestar of $2,018,876.45.   ¶79.[8]   Based on a 33% fee (equal to $2,145,000), Plaintiffs'

---

[7] The Supreme Court and courts in this Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest."   *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

[8] Plaintiffs' Counsel's rates range from $960 to $720 for partners, and $600 to $350 for of counsel/senior counsel/associates.   ¶78.   These hourly rates are well within the range of

Counsel's lodestar of $2,018,876.45 yields a multiplier of 1.06.  This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Bellifemine*, 2010 WL 3119374, at *6 (finding that a multiplier of 2.05 is "within a range of reasonableness for other awards that have been approved"); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (awarding 30% fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3, which was "not atypical for similar fee-award cases"); *Maley*, 186 F. Supp. 2d at 371 ("[T]he modest multiplier of 4.65 is fair and reasonable.").[9]

In sum, Lead Counsel's requested fee award is within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.  Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

---

reasonable fees for attorneys working on complex class-action litigation in this District.  *See* Ex. 12 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

[9] *See also In re AOL Time Warner S'holder Deriv. Litig.*, No. 02 Civ. 6302(CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) ("The requested multiplier of 1.60 is at the lower end of the range recently seen, which has generally run between 1.5 and 4.0."); *Hicks*, 2005 WL 2757792, at *10 ("In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts."); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. Sept. 10, 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (SHS), 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686 (SAS), 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding fee representing a 2.86 multiplier).

D.      **Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

1.      **Time and Labor Expended Support the Requested Fee**

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement supports the requested fee.  As set forth in greater detail in the Joint Declaration, Plaintiffs' Counsel's work on this matter included, among other things:

- conducting an extensive investigation of the claims asserted in the Action, including detailed reviews of SEC filings, press releases, analyst reports, news reports and other public information, Joint Decl. ¶4;

- consultation with forensic accounting and damages experts, *Id.* ¶¶4, 20;

- researching, preparing and filing the *Gingello* class action complaint, *Id.* ¶¶4, 9;

- researching, preparing and filing the *Kayce* class action complaint, *Id.* ¶¶4, 11;

- researching, preparing and filing the 210-page Amended Complaint, *Id.* ¶¶4, 30;

- consulting with bankruptcy counsel concerning Patriot National's bankruptcy proceedings; *Id.* ¶¶4, 19, 92;

- preparing for and making various court appearances, including before this Court, the Bankruptcy Court, and the United States Judicial Panel on Multidistrict Litigation, on behalf of Plaintiffs and the Class, *Id.* ¶¶4, 18, 19, 29, 32;

- negotiating the Settlement through the Mediation overseen by Robert A. Meyer, Esq. and Bruce A. Friedman, Esq. of JAMS, which included written submissions supporting liability and damages, and multiple mediation sessions (in-person and telephonic), *Id.* ¶¶4, 20-26;

- drafting and finalizing the terms of the Stipulation (including the exhibits thereto) with Defendants, *Id.* ¶¶4, 34;

- working with Plaintiffs' damages expert to prepare the proposed Plan of Allocation, *Id.* ¶¶4, 5, 66-74;

- conducting substantial due diligence discovery that included the review of approximately 250,000 pages of documents, including a significant number of internal records from Patriot National, *Id.* ¶¶4, 40;

- drafting the preliminary approval motion and reply papers, *Id.* ¶¶4, 35; and

- overseeing the implementation of the Notice process, *Id.* ¶¶4, 60-64.

Moreover, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See Facebook*, 2015 WL 6971424, at *10 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

## 2. The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM)(MHD), 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a

fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  In applying this factor, courts have repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *Flag Telecom*, 2010 WL 4537550, at *27; *see also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").  This case was no different.

From the outset of this Action, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action.  *See Flag Telecom*, 2010 WL 4537550, at *27.  Plaintiffs' Counsel received no compensation during the litigation, yet they devoted 3,268.79 hours of time and incurred $154,469.29 in expenses in prosecuting this Action for the benefit of the Settlement Class.  ¶¶79, 90.  Had Plaintiffs' Counsel not achieved the Settlement, this significant investment of time and money would have been lost.

While Plaintiffs' Counsel believe that Plaintiffs' claims are meritorious and remain confident in their ability to prove their claims and rebut any potential arguments advanced by Defendants, they also recognize that there were a number of substantial risks in the litigation and that Plaintiffs' ability to succeed at trial and obtain a substantial judgment was far from certain. As discussed in the Final Approval Memo at §III.B.2 and at ¶¶48-55 in the Joint Declaration, there were risks here with respect to establishing both liability and damages in the Action.

Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case.  ¶¶42-57; *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers*, L.L.P., 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

Plaintiffs faced the substantial burdens and unknowns of a motion to dismiss, class certification motion, summary judgment motions, trial and likely appeals – a process which could possibly have extended for years and might have led to a smaller recovery, or no recovery at all.  Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $6.5 million Settlement – especially given Patriot National's bankruptcy and the limited availability of the directors and officers insurance policies ("D&O Policies").[10]

Perhaps most significantly, this case presented real ability-to-pay issues, as Patriot National had filed for bankruptcy and would be unable to satisfy any judgment.  The only realistic source of recovery for Plaintiffs and the Settlement Class was the Company's D&O Policies, which were subject to numerous claims.  These claims included the claims of Patriot National's lender, Cerberus, First Insurance Funding and the creditor's committee, in addition to the Hedge Fund Actions.  These creditors and litigants have been aggressively pursuing their claims from the limited fund available to creditors and other claimants.  ¶¶16, 44.

---

[10] *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd, Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

The Mediation was compelled by the Bankruptcy Court, which ordered parties in various litigations–whose claims may have been covered by Patriot National's D&O Policies–to participate.  As the Mediation progressed, it became evident that the D&O Policies were wasting due to the significant litigation defense costs in these multiple actions.  Moreover, several entities appeared to have viable claims on the D&O Policies.  Continued litigation of the Action would only further shrink the small pot from which the Class could recover, and there was the real prospect that, without the Settlement, nothing would be left for the Class.  *See Yang v. Focus Media Holding Ltd.*, No. 11-cv-9051, 2014 WL 4401280, at *8 (S.D.N.Y. 2014) ("The Settlement avoids the risk that further litigation would have resulted in a lesser recovery even if Plaintiff prevailed on the merits because defense costs would have significantly depleted, if not exhausted, the available D & O Policy.").[11]  Accordingly, there was a very significant risk that the Action might yield a small recovery – or indeed no recovery at all – following many years of hard-fought litigation.

Despite the many uncertainties regarding the outcome of the case, Plaintiffs' Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses.  Plaintiffs' Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.  *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re*

---

[11] *See also In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("settlement amount is sufficient when limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [] Defendants are taken into account") (citing *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")).

*Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft*, 2007 WL 414493 at *10; *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated…where a number of controlling decisions have recently shed new light on the standard for loss causation."). Such was the case here. As noted above and in the Final Approval Memo and the Joint Declaration, the litigation was subject to complex defenses concerning liability, loss causation and damages that would have required extensive efforts by Plaintiffs' Counsel and consultation with experts to bring to resolution. *See* Final Approval Memo at §III.B.2, Joint Decl. ¶¶48-55. If the Action had not been settled, there would have likely been a significant amount of additional motion practice, including motion(s) to dismiss, class certification motion, summary judgment motions, and *Daubert* motions; discovery,

including depositions of fact and expert witnesses;[12] a trial; post-trial motion practice; and mostly likely appeals.

Consequently, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.   The Quality of Plaintiffs' Counsel's Representation Supports the Requested Fee

The quality of the representation by Plaintiffs' Counsel is another important factor that supports the reasonableness of the requested fee. Plaintiffs' Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *7 (S.D.N.Y. 2007); *Global Crossing*, 225 F.R.D. at 467. Here, the Settlement provides a favorable result for the Settlement Class in light of the serious risks of continued litigation against the Defendants, Patriot National's bankruptcy, and the wasting D&O Policies. *See EVCI*, 2007 WL 2230177, at *17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."); *see also Maley*, 186 F. Supp. 2d at 373 ("[E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Counsel's representation [], especially given the dire financial straits of [the company]."). Plaintiffs' Counsel, who have coordinated throughout the litigation so as to not duplicate any efforts, submit that the quality of their efforts in the litigation to date, together with their substantial experience in securities class actions and commitment to this litigation, provided the

---

[12] Patriot National's bankruptcy would have added layers of complexity to the discovery process especially given the limited budget allocated to the PNI Litigation Trustee.

leverage necessary to negotiate the Settlement.   *See* Exs. 2-6 (firm resumes of Plaintiffs'
Counsel).   *A fortiori*, this factor weighs in favor of the requested fee.

### 5.      The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of
the percentage it represents of the total recovery.   "When determining whether a fee request is
reasonable in relation to a settlement amount, the court compares the fee application to fees
awarded in similar securities class-action settlements of comparable value."   *Comverse*, 2010
WL 2653354, at *3.   As discussed in detail in Section III.C.1, *supra*, the requested 33% fee is
consistent with percentage fees that courts in the Second Circuit have awarded in comparable
complex cases.   Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.      Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the
federal securities laws must be considered."   *Maley*, 186 F. Supp. 2d at 373.   This is because
private actions such as this one serve to further the objective of the federal securities laws to
protect investors.   "[The Supreme] Court has long recognized that meritorious private actions to
enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and
civil enforcement actions brought, respectively, by the Department of Justice and the Securities
and Exchange Commission."   *Tellabs*, 551 U.S. at 313.   If the "important public policy [of
enforcing the securities laws] is to be carried out, the courts should award fees which will
adequately compensate Lead Counsel for the value of their efforts, taking into account the
enormous risks they undertook."   *Flag Telecom*, 2010 WL 4537550, at *29.   "[A]s a practical
matter, lawsuits such as this one can only be maintained if competent counsel can be retained to
prosecute them.   This will occur if courts award reasonable and adequate compensation for such
services where successful results are achieved."   *City of Providence*, 2014 WL 1883494, at *18;

*see also Hicks*, 2005 WL 2757792, at *9 ("Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,]…[but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").

Here, Plaintiffs' Counsel invested substantial amounts of time and money vigorously pursuing serious wrongdoing that caused the failure of a public enterprise. Consequently, public policy considerations favor Plaintiffs' Counsel's attorneys' fee request. *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

### 7.   The Reaction of the Settlement Class to Date Supports the Requested Fee

The positive reaction of the Settlement Class to date also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). Through October 1, 2019, the Claims Administrator had disseminated the Notice to 13,305 potential Settlement Class Members and their nominees informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund and up to $250,000 in litigation expenses. While the time to object does not expire until October 16, 2019, to date, not a single objection has been received. ¶86. The lack of objections is "strong evidence" of the reasonableness of the fee request. *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).[13]

---

[13] Should any objections be received, Plaintiffs' Counsel will address them in their reply papers.

###### E.     Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Plaintiffs' Counsel also request reimbursement of $154,469.29 in expenses incurred while prosecuting the Action.   In support of this request, Plaintiffs' Counsel have submitted separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel.  *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").   A significant portion of the expenses were incurred for professional services rendered by Plaintiffs' experts, consultants, and bankruptcy counsel, and the remaining expenses are attributable to the costs of legal and factual research, travel and other expenses incurred in the course of the litigation.   ¶¶90-93.   These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action.   As such, they should be reimbursed.  *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.   For this reason, they are properly chargeable to the Settlement fund.").   Additionally, no objections to the expense request have been received, and the amount requested is below the $250,000 limit disclosed in the Notice. *See* Ex. 1, Bravata Decl., Ex. A-Notice; Joint Decl. ¶96.   Accordingly, Lead Counsel respectfully request reimbursement for these expenses.

**F.      Plaintiffs Should be Awarded Their Reasonable Awards Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of litigation expenses, Lead Counsel also seek PSLRA awards of $2,500 each for Lead Plaintiffs Smith and Shah, and $1,000 for named Plaintiff Kayce, for a total of $6,000 for time spent prosecuting this action.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u- 4(a)(4).

Here, Lead Plaintiffs dedicated a significant amount of time to the successful prosecution of this Action by, among other things: receiving status reports from Plaintiffs' Counsel regarding case developments; participating in discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement; reviewing significant pleadings and briefs filed in the Action; consulting with Lead Counsel regarding the settlement negotiations; and evaluating and approving the proposed Settlement.  *See* Smith Decl., Joint Decl. Ex. 9, ¶5; Shah Decl., Joint Decl. Ex. 10, ¶5.

Named Plaintiff Kayce also took an active role in the litigation by: filing an initial complaint against Patriot National alleging violations of the federal securities laws; and continuing to serve as a representative of the Settlement Class by agreeing to be a named plaintiff in the Consolidated Amended Class Action Complaint, regularly communicating with Plaintiffs' Counsel regarding the posture and progress of the case, reviewing all significant pleadings filed in this Action, and evaluating and approving the proposed Settlement.  *See* Kayce Decl., Joint Decl. Ex. 11, ¶4.

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ.

498711.1

21

8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. 2009).   Accordingly, Plaintiffs' Counsel request that the Court grant Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class."   *Id.* at *21; *see also In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").

## IV.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant their application for an award of attorneys' fees, reimbursement of litigation expenses, and PSLRA awards to the Plaintiffs.

Dated: October 2, 2019                Respectfully submitted,

**BERGER MONTAGUE PC**

By: *s/ Lawrence Deutsch*
Lawrence Deutsch
Jacob M. Polakoff
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ldeutsch@bm.net
            jpolakoff@bm.net

498711.1

**GLANCY PRONGAY & MURRAY LLP**
Brian F. Murray
230 Park Ave, Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: bmurray@glancylaw.com

-and-

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Co-Lead Counsel for Plaintiffs*

**THE GRANT LAW FIRM, PLLC**
Lynda J.  Grant
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (212) 292-4441
Facsimile: (212) 292-4442
Email: lgrant@grantfirm.com

**SAFIRSTEIN METCALF LLP**
Peter Safirstein
Elizabeth Metcalf
The Empire State Building
350 Fifth Avenue, Suite 5960
New York, NY 10118
Telephone: (212) 201-2845
Email: psafirstein@safirsteinmetcalf.com
        emetcalf@safirsteinmetcalf.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (917) 697-8209
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

498711.1

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: October 2, 2019                       *s/ Lawrence Deutsch*
                                            Lawrence Deutsch