**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re PATRIOT NATIONAL, INC. SECURITIES LITIGATION | Case No. 1:17-cv-01866-ER |
| | Honorable Edgardo Ramos |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**

650521.1

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ..................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ...................................................................... 3

       A.     Background and Procedural History ................................................................. 3

       B.     The Proposed Second Amended Complaint....................................................... 8

III.   ARGUMENT ..............................................................................................................10

IV.    CONCLUSION............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Bensinger v. Denbury Res. Inc.*,
  2013 WL 3353975 (E.D.N.Y. July 3, 2013) ........................................................................ 11

*Block v. First Blood Associates*,
  988 F.2d 344 (2d Cir. 1993) ................................................................... 11, 12, 14, 15

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................................. 11

*In re Ashanti Goldfields Sec. Litig.*,
  2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) ...................................................................... 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 428 (S.D.N.Y. 2013) ................................................................................. 10

*In re Flint Water Cases*,
  2019 WL 3530874 (E.D. Mich. Aug. 2, 2019) ................................................................... 13

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ......................................................................................... 16

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 619 (S.D.N.Y. 2014) ................................................................................... 11

*In re Refco Sec. Litig.*,
  2013 WL 2035377 (S.D.N.Y. May 9, 2013) ....................................................................... 11

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ................................................................................................ 10

*Martin v. Sprint/United Mgmt. Co.*,
  2016 WL 2757431 (S.D.N.Y. May 12, 2016) ..................................................................... 15

*Mellon Bank, F.S.B. v. Alexander Wescott & Co.*,
  1999 WL 504914 (S.D.N.Y. July 16, 1999) ......................................................................... 2

*Mylan Ireland Ltd. v. Nostrum Labs., Inc.*,
  2019 WL 1486969 (S.D.N.Y. Apr. 3, 2019) ................................................................. 14, 15

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  347 F. App'x 617 (2d Cir. 2009) ......................................................................................... 15

*Quattrone v. Erie 2 Chautauqua–Cattaraugus Bd. of Co-op. Educ. Servs.*,
   2011 WL 294496 (W.D.N.Y. Jan. 27, 2011) ............................................................ 11

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
   46 F.3d 230 (2d Cir. 1995) .................................................................................. 12

*RNB Garments Philippines, Inc. v. Lau*,
   1999 WL 796175 (S.D.N.Y. Oct. 5, 1999) ............................................................... 2

*S.E.C. v. DCI Telecommunications, Inc.*,
   207 F.R.D. 32 (S.D.N.Y. 2002) ............................................................................ 14

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011) ........................................................................... 3, 10

## STATUTES

11 U.S.C. § 362 .......................................................................................................... 5

## RULES

Fed. R. Civ. P. 15 ...................................................................................................... 15

Fed. R. Civ. P. 15(a)(2) ...................................................................................... 1, 2, 10

## I.     PRELIMINARY STATEMENT

Pursuant to FED. R. CIV. P. 15(a)(2), Co-Lead Plaintiffs ODS Capital LLC, Barry A. Smith, and Sunil Shah (collectively, "Lead Plaintiffs") and named Plaintiffs Adam Kayce, Aric McIntire, Henry Wasik, and Harold J. Ireland (together with Lead Plaintiffs, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Leave to File a Consolidated Second Amended Class Action Complaint (the "Motion") in this action (the "Action").[1]

This case presents a unique procedural posture, based on its lengthy and complex litigation history.  Relevant to this motion is the consolidation of claims from the *McIntire, et. al. v. Mariano, et. al*., No. 0:18-cv-60075-BB (S.D. Fla.) action ("*McIntire*"), filed in the United States District Court for the Southern District of Florida on January 12, 2018.  The *McIntire* complaint alleged class claims against Patriot National's auditor, BDO USA, LLC ("BDO"), and Patriot National's underwriters for its initial public offering: UBS Securities LLC, BMO Capital Markets Corp., Truist Securities, Inc. (formerly known as SunTrust Robinson Humphrey, Inc.), JMP Securities LLC and William Blair & Company LLC (together, the "Underwriters;" and collectively with BDO, the "Remaining Defendants").  Therefore, the Remaining Defendants have been on notice of these class claims since January 2018.  On July 22, 2019, after much litigation, this Court consolidated the claims from *McIntire* into the Action.  ECF No. 123 (the

---

[1] If the Court grants Plaintiffs leave to amend, Plaintiffs will, promptly after the motion is granted, file a Consolidated Second Amended Class Action Complaint that is substantially similar to the Proposed Consolidated Second Amended Class Action Complaint ("PSAC") attached as Exhibit A to the Declaration of Lawrence Deutsch, filed concurrently herewith.  The PSAC's proposed class includes all persons or entities that purchased or otherwise acquired Patriot National common stock between January 15, 2015 and November 28, 2017, inclusive (the "Class Period"), including persons or entities that purchased or otherwise acquired Patriot National common stock pursuant or traceable to Patriot National's registration statement and prospectus ("the Registration Statement") issued in connection with Patriot National's January 15, 2015 initial public offering ("IPO"), and were damaged thereby.

"Second Consolidation Order").  The Second Consolidation Order was entered many months *after* Plaintiffs had filed their first Consolidated Amended Class Action Complaint ("FAC") and on the same day that the Court preliminarily approved Plaintiffs' settlement (the "Partial Settlement") with officers and directors (the "Settling Defendants") of Patriot National, Inc. ("Patriot National" or the "Company").

While the *McIntire* claims consolidated into the Action under the Second Consolidation Order, it did not address filing a second consolidated complaint, and Plaintiffs now seek leave to do so.  Not only do Plaintiffs seek to consolidate the claims against the Remaining Defendants into the PSAC (which makes sense given the final resolution of the claims from the Partial Settlement), but Plaintiffs also seek to add key facts further demonstrating the culpability of these Defendants.  The allegations against the Remaining Defendants from the *McIntire* complaint remain intact and Plaintiffs have also added new, highly relevant information obtained from the Florida Office of Insurance Regulation ("FOIR") and the Florida Department of Financial Services – Division of Rehabilitation and Liquidation ("FDFS"), including audit and investigative workpapers.

Leave to amend should be "freely give[n] . . . when justice so requires."  FED. R. CIV. P. 15(a)(2).  Specifically, leave to amend is appropriate when a party seeks to conform its pleadings to information obtained during the course of the litigation.  *See Mellon Bank, F.S.B. v. Alexander Wescott & Co.*, 1999 WL 504914, at *5 (S.D.N.Y. July 16, 1999).  Indeed, "[a] motion to amend the pleadings to conform to the evidence . . . may be made at any time, 'even after judgment,'" *RNB Garments Philippines, Inc. v. Lau*, 1999 WL 796175, at *1 (S.D.N.Y. Oct. 5, 1999), where, as here, it is not being interposed for the purpose of undue delay or in bad faith, it is not futile, and it will not prejudice Defendants.  Plaintiffs are instead seeking to promote efficiency with a

streamlined consolidated amended complaint focusing on the claims against the Remaining Defendants, including adding new facts from later-obtained documents.

This Circuit has a "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011), and in light of this preference, this Court should grant the motion and allow Plaintiffs to file the PSAC so that it may be considered and litigated on the merits.[2]

## II.   STATEMENT OF RELEVANT FACTS

### A.   Background and Procedural History

*Background and IPO*

On January 15, 2015, Patriot National conducted its IPO.  Patriot National's IPO was underwritten by the Underwriters, while BDO audited and certified the Registration Statement's audited financials.   In the Registration Statement, Patriot National and its business were misrepresented by, *inter alia*, BDO and the Underwriters.  These Remaining Defendants, among other things, (1) failed to exercise adequate due diligence, and (2) falsely opined on and certified Patriot National's audited financials, resulting in the material omissions and misstatements in the Registration Statement.

Additionally, BDO's violation of the securities laws continued throughout the Class Period, as BDO recklessly turned a blind eye to Patriot National's true financial circumstances. BDO consented to the inclusion of its improper audit opinions in Patriot National's 2014 10-K (dated March 31, 2015), which was also incorporated into Patriot National's October 2015 S-1, and 2015 10-K (dated March 18, 2016), each of which certified Patriot National's false and misleading audited financial statements.   BDO certified these financials despite the fact that

---

[2]   The Remaining Defendants have admitted that many of their futility arguments are more appropriately addressed in a Rule 12(b) motion to dismiss.  ECF No. 162 at 3 n.2.

BDO could not have subjectively believed its audit opinions in light of numerous obvious red flags.

In a series of partial disclosures, including the revelation on March 3, 2017 that Patriot National had made a $30 million payment to bail out Guarantee Insurance Company, Inc. ("GIC")—a company controlled by Steven Mariano, Patriot National's founder, Chairman, President and Chief Executive Officer, that was responsible for 60% to 70% of Patriot National's income and revenue—investors were slowly learning the truth.   On March 3, 2017, Patriot National's stock price dropped from $4.39 to $3.67 per share, or 16.4%, on unusually heavy trading volume.

_Litigation Ensues_

On March 14, 2017, Anthony Gingello and Co-Lead Counsel, Glancy Prongay & Murray LLP ("GPM"), filed the _Gingello v. Patriot National, Inc., et al._ securities class action case ("_Gingello_") in this Court against several of the Settling Defendants.   ECF No. 1.   On May 15, 2017, four distinct Patriot National shareholder groups, including (i) ODS Capital LLC ("ODS Capital"); and (ii) Barry A. Smith ("Smith") and Sunil Shah ("Shah;" together with Smith, the "Smith Group"), moved the Court for appointment as lead plaintiff.   ECF Nos. 6-16.   On September 20, 2017, named Plaintiff Adam Kayce filed the _Kayce v. Patriot National, Inc., et al._, Case No. 1:17-cv-07164 (DLC), class action complaint against several of the Settling Defendants in this District.   Mr. Gingello and ODS Capital moved the Court for an order consolidating _Kayce_ with _Gingello_ on October 6, 2017 (ECF No. 28), and the Court consolidated _Kayce_ with _Gingello_ on October 12, 2017, designating _Gingello_ as the lead case.   ECF No. 31.

On November 28, 2017, following GIC's (Patriot National's principal "customer") regulator-forced receivership, Patriot National announced an anticipated Chapter 11 bankruptcy filing.

On January 12, 2018, *McIntire*, another securities class action, was filed in the Southern District of Florida against some of the Settling Defendants and the Remaining Defendants.

On January 30, 2018, as planned, Patriot National filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of Delaware in the consolidated action *In re Patriot National Inc., et al.*, No. 1:18-bk-10189-KG ("BK"). On February 1, 2018, Lead Counsel notified the Court of Patriot National's bankruptcy. ECF No. 42. On February 2, 2018, the Court stayed this Action in accordance with the Bankruptcy Code's automatic stay provision codified in 11 U.S.C. § 362. ECF No. 43.

On February 7, 2018, Patriot National sought a Bankruptcy Court-ordered mediation to resolve all claims covered by its Directors and Officers Policies ("D&O Policies").

On February 27, 2018, this Court temporarily lifted the stay as to the individual Settling Defendants, named ODS Capital, Smith and Shah as Lead Plaintiffs, and appointed GPM and Berger Montague PC as Co-Lead Counsel. ECF No. 60.

*Mediation with the Settling Defendants*

On February, 28, 2018, the Bankruptcy Court ordered mediation for parties whose claims may have been covered by Patriot National's D&O Policies (the "Mediation"). BK ECF No. 256. At the Bankruptcy Court's direction, Plaintiffs' Counsel prepared for and participated in the Mediation, which was conducted by Robert A. Meyer, Esq. and Bruce A. Friedman, Esq. of JAMS. The Mediation took place over five (5) days—four (4) days in person and one (1) day by telephone—between April 18, 2018 and August 10, 2018. The final Mediation session resulted

in an agreement in principle between Plaintiffs and the Settling Defendants to settle the securities

law claims against those Defendants on behalf of the settlement class.

*First Amended Complaint and Further Consolidation*

On September 5, 2018, in order to conserve judicial resources and promote efficiency,

Plaintiffs filed a motion to intervene in *McIntire* and to have that related securities fraud case

transferred to this District (*McIntire* ECF No. 50, the "Motion to Intervene and Transfer") for

consolidation with this Action.

On September 5, 2018, an additional related securities class action was filed in the United

States District Court for the Southern District of Florida, *Kaniki v. Mariano, et al.*, No. 18-cv-

62097 (S.D. Fla.) ("*Kaniki*").

On September 18, 2018, following the successful Mediation, the Court lifted the stay in

the Action and granted Plaintiffs leave to file a consolidated amended complaint.  ECF No. 72.

Plaintiffs filed the 210-page FAC on October 18, 2018.  ECF No. 74.  The FAC specifically

stated that:

> Co-Lead Plaintiffs have moved to intervene in the related *McIntire v. Mariano*,
> 18-cv-60075-BB (S.D. Fla.) action and have that action transferred to this Court.
> **If the McIntire court grants Co-Lead Plaintiffs' motion, Co-Lead Plaintiffs will
> seek (1) to have McIntire consolidated into this action, and (2) this Court's
> leave to file an additional amended complaint to effectuate that consolidation.**

*Id.* at 1 n.1 (emphasis added).

On December 21, 2018, following the consolidation of claims against the Settling

Defendants and the formal execution of the Stipulation and Agreement of Settlement, Plaintiffs

filed their Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion") and

supporting papers.  *See* ECF Nos. 99-101.

On December 26, 2018, Judge Bloom of the United States District Court for the Southern District of Florida consolidated *Kaniki* with *McIntire*, designating *McIntire* as the lead case. *See McIntire* ECF No. 82. Then, on January 2, 2019, Judge Bloom granted Plaintiffs' Motion to Intervene and Transfer and directed the clerk to transfer the *McIntire* case to this District. *McIntire*, ECF No. 89.

Following the transfer of *McIntire* to this District and the reassignment of the case to this Court (*see* January 23, 2019 docket text), Lead Counsel submitted a letter to the Court requesting a pre-motion conference regarding Plaintiffs' then-anticipated motion to consolidate *McIntire* with the Action. *See* ECF No. 108. The Court endorsed Lead Counsel's letter, stating that it would hear Plaintiffs' request at the April 9, 2019 initial scheduling conference in *McIntire*. After such hearing and additional submissions, on July 22, 2019, the Court granted Plaintiffs' motion and consolidated *McIntire* into the Action. ECF No. 123.

*Preliminary Approval of Partial Settlement*

The Court granted Plaintiffs' Preliminary Approval Motion on July 22, 2019 (ECF No. 124), and a final approval hearing was set for November 6, 2019. ECF No. 126.

The Partial Settlement was conditioned on Plaintiffs' right to conduct due diligence discovery. *See* ECF No. 101-1 at ¶ 36. Lead Counsel was provided with and promptly reviewed over 39,000 documents from related litigation concerning Patriot National, consisting of nearly 250,000 pages.

*Final Approval of Partial Settlement*

On November 6, 2019, the Court held the final approval hearing and approved the Partial Settlement. Final approval of the Partial Settlement was appealed to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). ECF No. 155. Following briefing and

oral argument, the Second Circuit affirmed the Court's final approval of the Partial Settlement on October 2, 2020, and transmitted its mandate (the "Mandate") to this Court on October 26, 2020. ECF No. 159.

### B.   The Proposed Second Amended Complaint

The same day the Second Circuit issued the Mandate, Plaintiffs requested a status conference to discuss a schedule for filing the PSAC with the Court.  The PSAC focuses on the consolidated claims against the Remaining Defendants.  ECF No. 160.  Because the *McIntire* action alleging claims against the Remaining Defendants was not consolidated into the Action until nine (9) months after the FAC was filed, and seven (7) months after the Partial Settlement was reached and the Preliminary Approval Motion was filed, the appropriate opportunity to file the PSAC did not occur until after the Partial Settlement was fully and finally resolved.

Nonetheless, while the Partial Settlement approval process was taking place, Plaintiffs did not stand idly by.  Instead, through counsel, Plaintiffs continued their investigation into the claims against BDO and the Underwriters—Defendants that were now part of the Action via the consolidated *McIntire* action.  Plaintiffs' Counsel devoted significant time and resources to bolstering the allegations against the Remaining Defendants.  These efforts included making requests to the Florida regulators of GIC (the FOIR and the FDFS) for documents concerning GIC, Patriot National's main source of fee revenue, which BDO also had audited for years. Plaintiffs' Counsel followed up with these Florida entities repeatedly over the course of several months, and negotiated and executed a confidentiality agreement with BDO in order to be able to obtain key records of the BDO audit.  These efforts resulted in the production of a variety of documents, including BDO's audit workpapers of its audit of GIC.  To date, Plaintiffs have received over 6,600 documents from the FOIR and the FDFS.

*The Proposed Amendments*

The PSAC consolidates the allegations from the *McIntire* complaint against the Remaining Defendants.   The PSAC adds new facts stemming from the fruits of Plaintiffs' thorough and continued investigation.

Among other things, the PSAC provides detailed information that was available to the Underwriters and BDO at the time of the IPO.   The Underwriters had access to due diligence documents and BDO had access to GIC's financial records, which showed, *inter alia*, that:

- GIC sustained annual losses, resulting in its accumulated deficit continuing to grow year after year, and therefore, as of December 31, 2013, its accumulated deficit had grown to $125 million.

- Due to GIC's deteriorating business, GIC required regular capital infusions  to meet its regulatory capital requirements and such capital contributions were provided by Patriot National and its subsidiaries.

- GIC's continuing financial difficulties threatened GIC's ability to continue as a going concern and to avoid regulatory receivership.

- GIC and Patriot National were engaged in related party transactions that raised red flags of business and accounting impropriety.

BDO's audit opinions were also included in Patriot National's SEC filings following the IPO, including the: 2014 10-K (March 31, 2015); October 2015 S-1 (incorporating the audited financials of the 2014 10-K) and; 2015 10-K (March 18, 2016).   The PSAC provides new details alleging that when BDO audited and certified these financial statements, BDO was in possession of substantial information that raised glaring red flags as a result of auditing GIC for many years, including:

- Related party transactions between Patriot National and GIG, GIC's parent, that lacked economic substance, and that GIC received funds from these transactions in order to satisfy its necessary regulatory capital requirements.

- Mariano was not an employee of GIC, yet GIC disbursed funds to Mariano for his personal interests, which provided no economic benefit to GIC.   BDO knew that GIC had

provided $13 million to Mariano, despite no economic benefit to GIC, and that Mariano had failed to repay the funds when due on December 31, 2015.

- GIC had paid off Mariano's personal expenses, which provided no economic benefit to GIC.

- GIC's financial condition continued to deteriorate, including: 1) annual net losses, 2) increase to accumulated deficit, and 3) the need for capital contributions from related parties to stay solvent and continue as a going concern.

- GIC, which BDO knew to be controlled by Mariano, had provided funds to captive insurers that were managed by Mariano's cohort, Edward Snow, of the Carman Corporation, and at least one of the captives did not have to repay the funds.

- BDO was aware of increased regulation of GIC and that its insurance industry niche was facing contracting business volume in recent years.

As the PSAC's allegations make clear, BDO and Patriot National's Underwriters were instrumental in the issuance of Patriot National stock in the IPO and were a direct cause of the losses suffered by Patriot National's investors. Indeed, without the Remaining Defendants, Patriot National could not have sold shares to the public. The Remaining Defendants should, therefore, be held responsible for their violations of the federal securities laws.

## III.   ARGUMENT

In this Circuit, Rule 15 is applied as a "permissive standard" consistent with a "strong preference for resolving disputes on the merits." *Citigroup*, 659 F.3d at 212-13; *accord Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("we hew to the liberal standard set forth in Rule 15, which states that '[t]he court should freely give leave [to amend] when justice so requires.'") (quoting FED. R. CIV. P. 15(a)(2)). Generally, amendments are favored because they "tend to facilitate a proper decision on the merits." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 472 (S.D.N.Y. 2013). Accordingly, leave to amend should be granted barring a "substantial reason" such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *See Foman v. Davis*, 371 U.S. 178, 192 (1962).

Further, *the burden for demonstrating a basis for denying leave generally rests with the* **non-moving party**. The non-movant has the burden of demonstrating bad faith, prejudice, or futility. *In re Refco Sec. Litig.*, 2013 WL 2035377, at *1 (S.D.N.Y. May 9, 2013) (citing *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)). With respect to undue delay, the burden again is borne by the non-moving party. *Block*, 988 F.2d at 350.

Here, Plaintiffs seek to: (1) consolidate the later-incorporated claims from the *McIntire* complaint against BDO and the Underwriters into a streamlined amended complaint that accounts for the resolution of claims in the Partial Settlement; and (2) add key newly-obtained facts and analysis that were unavailable at the time the *McIntire* complaint and the FAC were filed. When a party presents a proposed amendment based upon newly-available evidence, courts in this Circuit will grant leave to amend. *See, e.g.*, *In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 620 (S.D.N.Y. 2014) (granting leave to amend where new court filing in third-party action alleged facts that might be relevant to plaintiffs' scienter allegations against two of the defendants).[3] Plaintiffs do not seek amendment for purposes of undue delay, bad faith or dilatory motive:

**No undue delay:** As explained at length in the procedural history section *supra*, Plaintiffs have diligently prosecuted this complex case and have not unduly delayed. The

---

[3] In fact, courts in this Circuit often allow amendments to include new facts in actions that are at significantly more advanced stages of the proceedings than here. *See, e.g.*, *Bensinger v. Denbury Res. Inc.*, 2013 WL 3353975, at *4 (E.D.N.Y. July 3, 2013) (permitting amendment after close of discovery to reassert dismissed §14(a) claim on behalf of plaintiff with standing); *Quattrone v. Erie 2 Chautauqua–Cattaraugus Bd. of Co-op. Educ. Servs.*, 2011 WL 294496, at *4 (W.D.N.Y. Jan. 27, 2011) (amendment permitted after close of discovery where testimony given in discovery shed new light on previously-known facts).

Remaining Defendants have the burden of demonstrating undue delay because this is not a case of "inordinate delay." *Block*, 988 F.2d at 350. The Remaining Defendants cannot meet this burden.[4]

While this Action was commenced in March 2017, it was not until February 27, 2018, nearly a year later, that Lead Plaintiffs and Co-Lead Counsel were appointed. Given the magnitude of Patriot National's fraud, there were a number of cases filed against the Company and its related parties, resulting in a complicated lead plaintiff appointment and consolidation process. In addition, Patriot National's January 2018 bankruptcy temporarily stayed the case.

Once Lead Plaintiffs and Co-Lead Counsel were appointed, Plaintiffs complied with the Bankruptcy Court's order compelling Mediation and diligently sought to obtain the best recovery for the putative class. These mediation efforts spanned from April 2018 to August 2018. It was not until late in the mediation process that *McIntire* opted out of inclusion in the settlement discussions.[5] Therefore, shortly after the conclusion of the Mediation, in September 2018, Plaintiffs sought to consolidate the *McIntire* action into the instant case by filing the Motion to Intervene and Transfer, and then further addressing this goal in litigation at the JPML.

Following the successful Mediation, Plaintiffs were given leave to file the FAC in September 2018. On October 18, 2018, Plaintiffs filed the FAC, which was amended for purposes of consolidating claims against the Settling Defendants. Despite Plaintiffs' efforts, at the time the FAC was filed, the *McIntire* action had not been transferred to this District.[6] It was

---

[4] Indeed, delay alone, which nonetheless is not present here, does not usually warrant denial of leave to amend. *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995).

[5] It was also during the pendency of the mediation process that Plaintiffs became aware that the Remaining Defendants were not going to participate in the Mediation.

[6] Again, as Plaintiffs noted in the FAC, they had "moved to intervene in the related *McIntire v. Mariano*, 18-cv-60075-BB (S.D. Fla.) action and have that action transferred to this Court. If the

not until January 2019, that the Florida District Court granted Plaintiffs' Motion to Intervene and Transfer and the *McIntire* case was transferred to this District.   Further, the Second Consolidation Order was not entered for another six months, on July 22, 2019, consolidating the *McIntire* case into this Action.

As this procedural history makes clear, there has been no undue delay by Plaintiffs. While the Remaining Defendants have suggested that Plaintiffs should have brought claims against them earlier, including in the October 2018 FAC, that argument ignores the procedural posture of the case.   The claims against the Remaining Defendants were not consolidated into this case until July 22, 2019, when the *McIntire* case was consolidated into this Action, nine (9) months after the FAC was filed.   Plaintiffs now seek to litigate those consolidated claims.

The complex procedural posture of this case weighs in Plaintiffs' favor here.   *In re Flint Water Cases,* 2019 WL 3530874, at *11 (E.D. Mich. Aug. 2, 2019), *aff'd in part and remanded (on other grounds)*, 969 F.3d 298 (6th Cir. 2020) (granting leave to amend and rejecting defendants' undue delay argument noting "[w]hat started out as a series of individual suits has become a large consolidated action.   And the complex nature of the claims coupled with less than straightforward procedure must be considered.   This weighs in plaintiffs' favor.").   Plaintiffs have diligently litigated this complex case, involving multiple actions with evolving consolidations and a bankruptcy stay, and have not unduly delayed.   Moreover, the Remaining Defendants have admitted that they were on notice of the claims against them throughout the pendency of this Action.   *See In re Ashanti Goldfields Sec. Litig.*, 2004 WL 626810, at *3 (E.D.N.Y. Mar. 30, 2004) (defendants' knowledge of pending amendment weighed against

---

*McIntire* court grants Co-Lead Plaintiffs' motion, Co-Lead Plaintiffs will seek (1) to have McIntire consolidated into this action, and (2) this Court's leave to file an additional amended complaint to effectuate that consolidation."   ECF No. 74 at 1 n.1.

finding of undue delay).[7]

**No bad faith or dilatory motive:**   Plaintiffs are seeking to consolidate later-added claims and amend some of those allegations against the Remaining Defendants based on new facts not previously known or available to Plaintiffs.   As discussed above, *McIntire*'s consolidation occurred long after the FAC was filed and Plaintiffs did not receive the information from the FOIR, the FDFS and the litigation trustee until after the *McIntire* complaint and the FAC were filed.   As such, Plaintiffs' purposes are not to delay nor brought in bad faith. *S.E.C. v. DCI Telecommunications, Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002) ("delay, standing alone, does not constitute bad faith.").

**No repeated failure to cure deficiencies by amendments previously allowed:**   The Court has not found any of Plaintiffs' claims deficient or previously allowed amendment for purposes of curing deficiencies.

**No undue prejudice to the opposing party by virtue of allowance of the amendment:** The Remaining Defendants have the burden to demonstrate actual prejudice, *Block*, 988 F.2d at 350, and there is no prejudice here.

This Court has previously recognized the factors to evaluate whether a proposed amendment would unduly prejudice the opposing party. *Mylan Ireland Ltd. v. Nostrum Labs., Inc.*, 2019 WL 1486969, at *5 (S.D.N.Y. Apr. 3, 2019) (Ramos, J.).   Courts consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii)

---

[7]   The Remaining Defendants have taken numerous actions since final approval of the Partial Settlement which suggest they knew the case was ongoing. *See* ECF No. 162 (letter admitting Remaining Defendants have been aware of pending securities claims against them); ECF No. 156 (Truist filed a supplemental corporate disclosure on December 30, 2019).   In addition, BDO's counsel negotiated with Lead Counsel over the production of the Florida documents.

prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* (quoting *Block*, 988 F.2d at 350.

Given the procedural posture of the case, the Remaining Defendants have not had to expend significant litigation costs in this Action (such as motion to dismiss or summary judgment briefing, or trial) and formal discovery has not commenced.  While Plaintiffs are adding new factual allegations, they are not adding new claims that would result in the expansion of resources needed for the Remaining Defendants to defend the Action.  Nor would amendment result in significant delay.  Again, there has been no motion to dismiss briefing, summary judgment briefing, or discovery (other than Plaintiffs' confirmatory discovery related to the Partial Settlement and Plaintiffs' continuing investigation, including through the FOIR and the FDFS) as a consequence of Patriot National's bankruptcy stay and the Partial Settlement.  The nascent stage of litigation cuts against any finding of undue prejudice.  *Martin v. Sprint/United Mgmt. Co*., 2016 WL 2757431, at *5 (S.D.N.Y. May 12, 2016) (collecting cases).

**Amendment is not futile:**  There is no basis for claiming that Plaintiffs' proposed amendment would be futile.  Granting leave to amend is futile if it appears that a plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

As an initial matter, the Remaining Defendants cannot bear their burden of showing the final factors under Rule 15 warrant denial of this motion.  The "futility" analysis usually comes into play only after there has been a finding of some deficiency in the operative pleading—this is why courts ask if there have been repeated failures to cure an identified defect.  Here, there are no such failures for the simple reason that no defects have ever been identified.  The Court has never ruled that any complaint in the Action is deficient in any way.

Secondly, owing to the unique posture of this case, no motion to dismiss under Rule 12(b)(6) has yet been filed, and presenting extensive argument in this submission based upon anticipated or speculative grounds for dismissal would be particularly wasteful.  Determining whether a complaint states a claim in a case arising under the Private Securities Litigation Reform Act (the "PSLRA") is a difficult task.  Thus, "[w]here [] the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent."  *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 125 n.11 (S.D.N.Y. 2002).  This case is no exception.  The Court should consider the Remaining Defendants' anticipated arguments regarding the merits of the PSAC's claims at the appropriate time, *i.e.*, during motion to dismiss briefing, and grant the instant motion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) grant Plaintiffs' motion and permit Plaintiffs to file a Consolidated Second Amended Class Action Complaint ("SAC") within three business days of the Court's entry of such order; and (ii) enter a briefing schedule whereby the Remaining Defendants, if they plan to file a motion to dismiss the SAC, do so within forty-five days of Plaintiffs' filing of the SAC; that Plaintiffs file a response in opposition to any motion to dismiss within forty-five days of the filing of that motion; and that any reply in further support of any motion to dismiss be filed within thirty days of Plaintiffs' filing of an opposition.

Dated: December 18, 2020          **BERGER MONTAGUE PC**

By: *s/ Lawrence Deutsch*
Lawrence Deutsch
Jacob M. Polakoff
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ldeutsch@bm.net
        jpolakoff@bm.net

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Jennifer M. Leinbach
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        clineham@glancylaw.com
        jleinbach@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

**THE GRANT LAW FIRM, PLLC**
Lynda J. Grant
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (212) 292-4441
Facsimile: (212) 292-4442
Email: lgrant@grantfirm.com

**SAFIRSTEIN METCALF**
Peter Safirstein
Elizabeth Metcalf
1345 Avenue of the Americas, 2nd
Floor
New York, NY 10105
Telephone: (212) 201-2845
Email: psafirstein@safirsteinmetcalf.com
        emetcalf@safirsteinmetcalf.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (917) 697-8209
Email: peretz@bgandg.com

**LEVI & KORSINSKY LLP**
Nicholas I. Porritt
1101 30th Street NW
Suite 115
Washington, D.C. 20007
Tel : (202) 524-4290
Email: nporritt@zlk.com

*Additional Counsel for Plaintiffs*

650521.1

18